# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**William M. Vannattan,**

        **Plaintiff,**

**v.**                                **Case No. 16-cv-2147-JWL**

**VendTech-SGI, LLC and**
**Securiguard, Inc.,**

        **Defendants.**

## MEMORANDUM & ORDER

In this lawsuit, plaintiff William M. Vannattan alleges that defendants violated the Americans with Disabilities Act ("ADA"), *as amended by* ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., by removing plaintiff from a position he held for more than 13 years after plaintiff failed to pass an "Ishihara" color vision test and arguably no longer met the "normal color vision" requirement for the position. Plaintiff further alleges that defendants failed to accommodate his request to have his color vision evaluated under a basic color-vision test that plaintiff had passed on prior occasions and failed to provide him the opportunity to obtain color-corrective lenses that would mitigate his deficiency. This matter is presently before the court on defendants' motion for summary

judgment on plaintiff's claims (doc. 57). As will be explained, the motion is granted in part and denied in part.[1]

## I.  Facts

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party. Defendants provide security services through federal-government contracts in the State of Kansas. Pertinent to this case, defendants had a contract with the Federal Protective Service ("FPS") to provide security services at a United States Environmental Protection Agency ("EPA") facility located in Lenexa, Kansas.[2] That contract contained a "Statement of Work" that set forth certain medical standards that employees working under the contract were required to meet. One of those requirements is that PSOs have "normal color vision." That phrase is not defined in the Statement of Work and the contract does not mandate or preclude the use of any particular test in assessing the color vision of an applicant or employee. The contract also required employees to undergo a medical examination at the time of hire and every three years thereafter to ensure that employees continued to meet the contractual medical requirements.

Plaintiff is a 63-year-old male who was employed by defendants as a Protective Security Officer (PSO) from March 31, 2012 until February 25, 2015. Plaintiff, however, had worked as

[1] In the pretrial order, plaintiff asserted claims of retaliation under the ADAAA and the ADEA. Defendants have moved for summary judgment on those claims and, in response, plaintiff has indicated his desire to voluntarily dismiss those claims from this lawsuit. Defendants have no objection to this approach and, thus, the court dismisses those claims.

[2] Defendant Securiguard contends that it never employed plaintiff. As explained below, factual issues exist as to whether defendants operated as a single employer.

a PSO under defendants' predecessors under a similar FPS contract since 2002. Plaintiff was stationed at the EPA facility in Lenexa, Kansas and his job duties included, among other things, screening visitors for entry into the facility; using a magnetometer, issuing badges, operating an x-ray machine, and writing up incident reports with descriptions of what he saw and heard. At the time defendants hired plaintiff in 2012, plaintiff was given a "basic" color-vision test which revealed no color-vision deficiency. On February 19, 2015, plaintiff underwent his required triennial medical examination, which was conducted at a Concentra clinic in Kansas City, Kansas. For the first time, plaintiff's color vision was tested using the "Ishihara" color-plate test. Based on the results of that test, the examining physician marked "no" in response to a question on the Medical Examination Questionnaire that asked whether the patient exhibited "normal color vision." Defendants received the results of plaintiff's medical examination later that same morning. At that point, defendants removed plaintiff from working under the FPS contract and advised plaintiff to speak with Jennifer Sutton, defendants' Kansas City office manager. Plaintiff's evidence suggests that, during this same time frame, the color vision of ten (10) other PSOs working under the same FPS contract was tested using alternate (and less stringent) color-vision tests rather than the Ishihara test.

Ms. Sutton informed plaintiff that all PSOs were contractually required to have "normal color vision" and that, in all likelihood, plaintiff's employment would be terminated based on the results of his medical examination and his inability to meet the medical standards in the Statement of Work. Ms. Sutton told plaintiff that he could return to the doctor at Concentra for further review or visit his own optometrist for an evaluation of his color-vision deficiency, but that his employment would nonetheless be terminated because plaintiff's color-vision deficiency

was not treatable.  On February 23, 2015, plaintiff was examined by his optometrist, Dr. Andrew Franken.  Dr. Franken confirmed that plaintiff had a mild red-green color-vision deficiency based on the Ishihara test but indicated that plaintiff was able to properly identify all the basic colors when prompted using "the basic color identification test."  Dr. Franken's report was provided to defendants on February 23, 2015.  Defendants' human resources director, Leslie Howard-Watts, made the decision to terminate plaintiff's employment two days later.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.      Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* at 1143-44.

## III.     Disability Discrimination Claims

In the pretrial order, plaintiff asserts claims for disability discrimination against defendants under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, as amended by the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553. Plaintiff alleges that defendants terminated plaintiff's employment based on plaintiff's mild color-vision deficiency and that defendants failed to accommodate his request to have his color vision evaluated under a basic color-vision test and failed to provide him the opportunity to obtain color-corrective lenses that would mitigate his deficiency. Defendants move for summary judgment on these claims.

## A. Termination Claim

The ADAAA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Defendants do not dispute that plaintiff's employment was terminated based on his color-vision deficiency.[3] In such circumstances, the court agrees with plaintiff that the *McDonnell Douglas* burden-shifting framework is inappropriate. *See Hawkins v. Schwan's Home Service, Inc.*, 778 F.3d 877, 883 (10th Cir. 2015) (*McDonnell Douglas* analysis inapplicable when ADA plaintiff is terminated based on failure to receive medical qualification in light of health conditions). Plaintiff, however, must still establish a prima facie case of discrimination. To establish a prima facie case of discrimination, plaintiff must present evidence that (1) he is disabled within the meaning of the ADAAA; (2) he

---

[3] Defendants contend that they terminated plaintiff's employment not on the basis of his color-vision deficiency but because of plaintiff's "inability to meet the explicit requirements of the PSO position." It is undisputed that the only requirement that plaintiff arguably failed to meet was the "normal color vision" requirement.

is qualified to perform the essential functions of his job with or without accommodations; and (3) he was terminated because of his disability. *Id.* Defendants will then defend their decision "on the ground that plaintiff is not qualified for the position, with or without reasonable accommodation" within the meaning of the ADAAA. *See id.* At that point, plaintiff's status as a "qualified" individual with a disability becomes the determinative issue in the case. *Id.*

1. Whether Plaintiff is Disabled

Congress has provided three statutory definitions for "disability" under the ADA: A plaintiff may show "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Smothers v. Solvay Chems., Inc*., 740 F.3d 530, 544 (10th Cir. 2014) (quoting 42 U.S.C. § 12102(1)). In the pretrial order, plaintiff contends that defendants discriminated against him on the basis of an actual disability under subsection (A) and on the basis of a perceived disability under subsection (C).

To demonstrate an actual disability under subsection (A), plaintiff must have a physical or mental impairment that substantially limits one or more major life activities. *See* 42 U.S.C. 12102(1)(A). Here, plaintiff contends that his color-vision deficiency substantially limits two of plaintiff's major life activities—seeing and working. To show that his color-vision deficiency substantially limits one or more major life activity, plaintiff must show that he is substantially limited in his ability to perform the major life activity "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to

be considered substantially limiting. *Id.* Nonetheless, not every impairment will constitute a disability for purposes of the ADAAA. *Id.* The determination of whether an impairment substantially limits a major life activity requires an "individual assessment," *id.* § 1630.2(j)(1)(iv), and may take into consideration facts such as the difficulty, effort or time required to perform the major life activity; pain experienced when performing a major life activity; and/or the way the impairment affects the operation of a major bodily function. *Id.* § 1630.2(j)(4)(ii).

In support of his argument that his color-vision deficiency substantially limits his ability to see, plaintiff contends that he cannot see certain "shades" of reds and greens in the same way as people without color blindness can. Without more, plaintiff's evidence does not support an inference that his color-vision deficiency substantially limits his ability to see. To begin, although the ability to see is a major life activity, color-distinction is only one aspect of sight. *See Ferguson v. Whirlpool Corp.*, 2000 WL 1013309, at *3 (W.D. Ark. Apr. 5, 2000). Consistent with that principle, plaintiff testified that his deficiency does not affect his ability to see (or to perform any other major life activities) in any respect. Moreover, it is undisputed that plaintiff routinely passed more basic color-vision tests. Given that plaintiff does not believe that he is substantially limited in his ability to see and that he passed basic color-vision examinations, the court cannot conclude that plaintiff's admittedly "mild" color-deficiency substantially limits his ability to see.[4]

---

[4] The court cannot locate one case under the ADA in which a court determined that a plaintiff's color-vision deficiency substantially limited the major life activity of seeing.

The court turns, then, to plaintiff's argument that his color-vision deficiency substantially limits his ability to work. The ADAAA did not modify the definition of the major life activity of working. *See Allen v. SouthCrest Hosp.*, 455 Fed. Appx. 827, 834 (10th Cir. Dec. 21, 2011). Thus, even after the enactment of the ADAAA and the modified EEOC regulations, plaintiff, to show a disability in the major life activity of working, is required to demonstrate that he is substantially limited in performing a class of jobs or broad ranges of jobs in various classes as compared to most people with comparable training, skills and abilities. *Id.* at 835. As the Interpretive Guidance to the amended regulations explains, the major life activity of working "will be used in only very targeted situations" and in "rare cases" when an individual has a need to demonstrate that an impairment substantially limits him or her in working. *Substantially Limited in Working*, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. Pt. 1630, App. (explaining that in light of amendments, an impairment that substantially limits a person's ability to work usually will substantially limit one or more other major life activities).

Plaintiff asserts that his color-vision deficiency substantially limits his ability to work in a class of jobs—security and law enforcement positions that require normal, uncorrected color vision. *See id.* ("A class of jobs may be determined . . . by reference to job-related requirements that an individual is limited in meeting."). But the evidence does not support that assertion. First, plaintiff has no evidence bearing on the number or types of security or law enforcement jobs that require "normal, uncorrected color vision." More importantly, even assuming that a large number of security or law enforcement jobs require "normal color vision," there is no evidence as to how many of those jobs require normal color vision as measured by the Ishihara

color-plate test as opposed to an alternate, less stringent color vision test. For it is uncontroverted that plaintiff (who obtained employment as a security officer after defendants terminated his employment) would not be precluded from jobs requiring "normal color vision" as measured by a less stringent test. For these reasons, plaintiff cannot demonstrate a substantial limitation on his ability to work in the class of jobs that he identifies.

In addition to alleging discrimination on the basis of an actual disability, plaintiff contends also contends that he satisfies the "regarded as" prong of the definition of disability. An individual meets the requirement of "being regarded as having such an impairment" under prong (C) of the definition of disability "whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C .§ 12102(3)(A). In other words,

> [u]nlike an impairment as defined in subsections (A) or (B), an impairment under § 12102(1)(C) need not limit or even be perceived as limiting a major life activity—the employer need only regard the employee as being impaired, whether or not the employer also believed that the impairment prevented the employee from being able to perform a major life activity. Under the ADAAA, the only qualification for an impairment in a "regarded as" claim is that the impairment not be "transitory and minor." *Id*. § 12102(3)(B); *see id*. ("Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.").

*Adair v. City of Muskogee*, 823 F.3d 1297, 1305-06 (10th Cir. 2016) (Today, a plaintiff bringing a "regarded as" claim "needs to plead and prove only that she was regarded as having a physical or mental impairment."); *accord* 29 C.F.R.§ 1630.2(g)(3) & (j)(2).

Defendants, relying on this court's decision in *Fritz v. United Parcel Service, Inc*., 2016 WL 4565692 (D. Kan. Sept. 1, 2016), contend that summary judgment is appropriate on plaintiff's "regarded as" claim because plaintiff cannot establish that defendants regarded plaintiff's impairment as one that substantially limited a major life activity. As plaintiff aptly

points out, this court's *Fritz* decision erroneously applied the pre-ADAAA standards in analyzing a "regarded as" claim that had been neither preserved in the pretrial order nor briefed by the parties. Under the amendments, it is irrelevant whether plaintiff's color-vision deficiency substantially limited him from performing a major life activity. Defendant's argument, then, necessarily fails.

Defendants assert only one other argument in their motion for summary judgment with respect to whether plaintiff can establish a disability under the "regarded as" prong. Specifically, defendants contend that they did not "regard" plaintiff as impaired but only "recognized" a "reported limitation based on a doctor's note." The distinction, if any, is one without a difference. Under the ADAAA, plaintiff need only show that his color-vision deficiency was an actual or perceived impairment and that defendants were aware of that impairment at the time of the termination decision. *See Adair*, 823 F.3d at 1306. Plaintiff has clearly shown this much. The only remaining question is whether the impairment is "minor" such that the "regarded as" prong does not apply. *See* 42 U.S.C. § 12102(3)(B) ("Paragraph (1)(C) shall not apply to impairments that are transitory and minor.").[5]

The Circuit appears to place the burden of proof on the plaintiff to establish that his or her impairment is "not minor" as part of the plaintiff's prima facie case. *See id*. at 1306 ("[T]he plaintiff must show that . . . [the] impairment is neither transitory nor minor."). Both the statute and implementing regulations, however, seem to place the burden of proof on the employer to establish that the impairment is minor. *See* 42 U.S.C. § 12102(3)(A) & (B); 29 U.S.C. § 1630.15 (f) (to establish the "defense" that an impairment is transitory and minor, an employer

---

[5] It is undisputed that plaintiff's color-vision impairment is not transitory.

10

must demonstrate that the impairment is objectively both transitory and minor). The parties do not address this issue. Either way, the court cannot grant summary judgment on the issue of whether plaintiff's impairment is "minor" because defendants have raised that issue for the first time in their reply brief such that the argument is not properly before the court. *Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (court does not consider arguments raised for the first time in reply brief).

2. Whether Plaintiff was Qualified to Perform the Essential Functions of the Job

Because plaintiff has survived summary judgment on the issue of whether defendants regarded plaintiff as impaired, the court turns to the issue of whether plaintiff was qualified to perform the essential functions of the position—that is, functions that bear more than a marginal relationship to the job at issue. *See Hawkins v. Schwan's Home Serv., Inc*., 778 F.3d 877, 887 10th Cir. 2015). If material issues of fact exist concerning plaintiff's status as a qualified individual, summary judgment must be denied because defendants undisputedly terminated plaintiff on the basis of his impairment. *See id. at* 883-84 (where the employer admits that the impairment played a part in the decision, the determinative issue is whether plaintiff was qualified to perform the essential functions of the position). In analyzing whether a particular function is essential to the job at issue, the court considers:

> (1) the employer's judgment as to which functions are essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the consequences of not requiring the incumbent to perform the function, and (4) the current work experience of incumbents in similar jobs.

*Id.* at 888 (quoting *Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir. 2000); 29 C.F.R.§ 1630.2(n)(3).

Plaintiff has come forward with some evidence that he could perform the essential functions of his position—including evidence that he successfully performed the job for many years without incident. Defendants, in response, assert that "normal color vision" is an essential function of the position and a contractually required qualification under the FPS Statement of Work in defendants' contract with the federal government. Defendants contend that while the "normal color vision" qualification might come into play on an infrequent basis (i.e., providing color descriptions of individuals, objects and events; identifying hazardous material in an x-ray machine), the qualification is nonetheless essential because the qualification bears directly on an employee's ability to respond to safety and security risks in emergent situations.

Defendants have demonstrated that the "normal color vision" requirement is an essential function of the PSO position. Although individuals in that position may not regularly rely on normal color vision in performing their duties, the consequence of failing to require PSOs to have normal color vision could be serious in the case of an emergency. *See Adair v. City of Muskogee*, 823 F.3d 1297, 1309 (10th Cir. 2016). Nonetheless, genuine issues of fact exist as to whether plaintiff had "normal color vision" for purposes of the FPS Statement of Work. To begin, the Statement of Work does not define the phrase "normal color vision;" contains no standards for measuring "normal" color vision; and does not mandate or preclude the use of any particular color-vision test. Moreover, at the time plaintiff failed the more stringent Ishihara color-plate test, plaintiff's optometrist indicated that plaintiff was able to properly identify all the basic colors when prompted using "the basic color identification test." Consistent with that

evidence, plaintiff testified that he was given a "basic" color vision test in 2012 (described by plaintiff as the "regular" test that he "normally" took) and he passed that test. Finally, there is evidence in the record, viewed in the light most favorable to plaintiff, permitting an inference that other PSOs, during the time frame when plaintiff was given and failed the Ishihara test, were deemed to have "normal color vision" for purposes of the FPS contract without regard to the Ishihara test so long as they passed an alternate color-vision test such as the "lantern" test or "yarn" test. In that regard, plaintiff has submitted the reports from the medical examinations (examinations that were required by defendants) of ten (10) other PSOs.[6] In each of those reports, the examining physician did not answer the question that asked "Is color vision normal when Ishihara or other color plate test is used?" and then answered "yes" to the question "If not, can applicant pass lantern, yarn, or other comparable test?"

Defendants do not controvert that these other PSOs served under the same FPS contract and Statement of Work and do not otherwise attempt to explain why these PSOs, unlike plaintiff, were deemed to have "normal color vision" for purposes of the contract. Defendants' only objection to this evidence is that the medical records are (1) unauthenticated documents and (2) constitute hearsay, such that they are inadmissible on summary judgment. The court rejects both objections. Defendants contend that the records are unauthenticated because plaintiff lacks personal knowledge about the contents of the records and has not produced an affidavit or deposition testimony from anyone with personal knowledge of the contents. But the Tenth Circuit does "not require an affidavit to authenticate every document submitted for consideration

_____

[6] Plaintiff has submitted one additional report but that report does not contain the name or any other identifying information concerning the applicant.

at summary judgment." *Law Co. v. Mohawk Constr. & Supply Co*., 577 F.3d 1164, 1170 (10th Cir. 2009). In determining whether a document has been properly authenticated at the summary judgment stage, "Rule 56(c) and the Federal Rules of Evidence control." *Id.* Under Rule 56(c), affidavits are one of many forms of evidence that can support a factual position. Other forms include "depositions, documents, electronically stored information, . . . stipulations . . ., admissions, interrogatory answers, or other materials." Fed R. Civ. P. 56(c)(1)(A). Under Federal Rule of Evidence 901, evidence satisfying the authentication requirement can include "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). In this case, plaintiff's affidavit reveals the source of the records—they were all produced by defendants during discovery and bear defendants' Bates stamp. The authenticity of the documents, then, cannot be seriously disputed. And while defendants have not explained the nature of their hearsay objection, it is clear that none of the statements in the medical records are being offered to prove the truth of the matter therein. Rather, plaintiff is offering the medical records to show that defendants permitted PSOs to satisfy the "normal color vision" requirement in ways other than the Ishihara test such that a reasonable jury could conclude that plaintiff in fact was qualified for the position.

Taking all of these facts together, a reasonable jury could conclude that plaintiff had "normal color vision" within the meaning of the FPS Standard of Work such that he satisfied that essential function of the PSO position. Because factual issues exist with respect to whether plaintiff was qualified to perform the essential functions of the PSO position, summary

judgment is denied on plaintiff's claim that defendants terminated his employment on the basis of a perceived disability. *See Hawkins*, 778 F.3d at 883-84.

## B. Failure to Accommodate Claims

Plaintiff alleges that defendants failed to accommodate his request to have his color vision evaluated under a basic color-vision test and failed to provide him the opportunity to obtain color-corrective lenses that would mitigate his deficiency. The ADAAA prohibits an employer from "unlawfully discriminating against an employee by failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." *Dewitt v. Southwestern Bell Tel. Co*., 845 F.3d 1299, 1315 (10th Cir. 2017) (citations and quotations omitted). An employer, however, is not required to provide a reasonable accommodation to an individual, like plaintiff, who meets the definition of disability solely under the "regarded as" prong. 42 U.S.C. § 12201(h); 29 C.F.R. § 1630.2(o)(4). Summary judgment, then, is required on plaintiff's failure-to-accommodate claims.

## IV.    Age Discrimination Claim

In the pretrial order, plaintiff asserts that defendants terminated his employment on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. As plaintiff has no direct evidence of discrimination, his claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 627 (10th Cir. 2012).

Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination. *Id.* To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Id.* (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)). If he establishes a prima facie case, the burden shifts to defendants to assert a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If defendants meet this burden, summary judgment against plaintiff is warranted unless he introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." *Id.* (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

## A. Plaintiff's Prima Facie Case

In their motion for summary judgment, defendants contend that plaintiff cannot establish a prima facie case of discrimination because he was not qualified for the position (an element sometimes utilized as part of the prima facie case) and because he cannot establish that similarly situated employees outside the protected class were treated more favorably. As evidence of plaintiff's lack of qualification, defendants rely on their asserted reason for terminating plaintiff's employment—his failure to meet the "normal color vision" requirement. Defendants, then, urge the court to consider their proffered nondiscriminatory reason for the employment decision in connection with analyzing plaintiff's prima facie case. Stated another way, defendants suggest that plaintiff must disprove defendants' proffered reason for the employment decision in order to establish his prima facie case. This argument constitutes an impermissible "end run" around the *McDonnell Douglas* analysis and the court cannot consider it at the prima

facie stage. *See, e.g.*, *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192–94 (10th Cir. 2000) (requiring plaintiff to disprove defendant's proffered reason for employment decision to establish prima facie case would inappropriately short circuit *McDonnell Douglas* analysis and frustrate plaintiff's ability to establish pretext).

The court also rejects at this stage defendants' argument concerning plaintiff's comparison to similarly situated employees. The Tenth Circuit has repeatedly cautioned that comparison to similarly situated employees is not required as part of a plaintiff's prima facie case and that the relevant prima facie element may be framed more broadly, requiring only a "showing of circumstances giving rise to an inference of discrimination." *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (collecting cases); *English v. Colo. Dept. of Corrs.*, 248 F.3d 1002, 1008 (10th Cir. 2001) (In disciplinary discharge cases, a "plaintiff does not have to show differential treatment of persons outside the protected class to meet the initial prima facie burden under *McDonnell Douglas*."). To raise an inference of discrimination at the prima facie stage in a discriminatory discharge case, a plaintiff's burden is not onerous—he need only show that he belongs to a protected class; that he was qualified for his job; and that the job was not eliminated after his discharge. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000); *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999); *see also Nguyen v. Gambro BCT, Inc.*, 242 Fed. Appx. 483, 487-89 (10th Cir. 2007) (prima facie step is utilized to eliminate the two most common explanations for termination—lack of qualification or the elimination of the position). Plaintiff was 61 years of age at the time of his termination; he was qualified for the position as evidenced by his having held that position for 13 years with no performance-related issues; and his position was not eliminated after his

termination.  For purposes of summary judgment, plaintiff has satisfied his prima facie case. This aspect of defendants' motion is denied.

B.    *The Pretext Analysis*

Because plaintiff has satisfied his burden of establishing a prima facie case of discrimination, the court turns to whether defendants have met their burden to articulate a legitimate, nondiscriminatory reason for the employment decision. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).  The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendants have carried it here.  *See id*. According to defendants, they terminated plaintiff's employment because plaintiff failed to meet the "normal color vision" requirement set forth in defendants' contract with the FPS and defendants were not aware of any accommodation that might enable plaintiff to meet that requirement.  The burden of proof, then, shifts back to plaintiff to show that defendants' proffered reason is pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Carter*, 662 F.3d at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000)).  A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated

18

similarly situated employees differently. *Crowe v. ADT Servs., Inc*., 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *McDonald-Cuba v. Santa Fe Protective Servs., Inc*., 644 F.3d 1096, 1102 (10th Cir. 2011).

In support of his pretext argument, plaintiff relies again on the reports from the medical examinations of 10 other PSOs. At least 8 of those PSOs were substantially younger than plaintiff. Viewing those reports in the light most favorable to plaintiff, they permit an inference that defendants routinely permitted younger PSOs to satisfy the "normal color vision" requirement by using a far less stringent test than the Ishihara test provided to plaintiff. Defendants' inconsistent (and unexplained) application of the "normal color vision" qualification disadvantaged plaintiff. This is evidence of pretext. In addition, plaintiff has some evidence that defendants permitted a substantially younger PSO to continue working on the FPS contract despite that PSO's documented color-vision deficiency. In that regard, plaintiff has submitted the report from the 2012 medical examination of Sonny Velasquez on which the examining physician answered "No" to the question of whether Mr. Velasquez had normal color vision. As defendant points out, there is no context provided to the report. The basis for the negative response is not known—the report does not indicate whether Mr. Velasquez failed a color-vision test or whether any follow-up information indicated that the response was incorrect. But defendants have not provided any of that information in their submissions such that the

court is left with a document suggesting that Mr. Velasquez, unlike plaintiff, was permitted to continue working despite a color-vision deficiency.[7] A jury could reasonably infer from that document that Mr. Velasquez failed a color-vision test, that defendants had knowledge of his color-vision deficiency, and that defendants permitted Mr. Velasquez to continue working on the FPS contract despite knowledge of that deficiency. Plaintiff's evidence, then is sufficient to raise a triable issue on pretext. Defendants are not entitled to summary judgment on plaintiff's claim that defendants terminated his employment on the basis of his age.

## V.    Integrated Enterprise

Lastly, defendant Securiguard moves for summary judgment on the grounds that it was never plaintiff's employer as required for liability under the ADAAA and the ADEA. Plaintiff contends that VendTech and Securiguard constituted a "single employer" plaintiff because those entities operate as an integrated enterprise. *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226–27 (10th Cir. 2014) ("Under the single employer test, two entities can be found to effectively constitute a single employer if they are an "integrated enterprise."). To determine whether two entities constitute a "single employer" or integrated enterprise, courts "generally weigh four factors: (1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." *Id.* at 1227. The most important prong of the single-employer analysis is the centralized control of labor relations. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 n. 9 (10th Cir. 2011).

---

[7] Defendants do not dispute that Mr. Velasquez continued working on the FPS contract after his 2012 medical examination.

A reasonable jury could conclude that Securiguard and VendTech constituted a single employer. Viewed in the light most favorable to plaintiff, the evidence demonstrates that Securiguard exercised significant control over labor relations at VendTech. *See Bristol v. Board of County Comm'rs*, 312 F.3d 1213, 1220 (10th Cir. 2002) (the extent to which one entity can be said to control the labor relations of the other entity's employees is "highly determinative" under the single-employer test). It is undisputed that Ms. Howard-Watts is the director of Human Resources for both entities but that she is paid only by defendant Securiguard. Ms. Howard-Watts has one office at the entities' shared headquarters in McLean, Virginia where she conducts business for both entities. It is undisputed that Ms. Howard-Watts is the ultimate decisionmaker with respect to termination decisions for both entities. Moreover, Securiguard does not dispute that Ms. Howard-Watts reports directly to Patricia Marvil, who is the president and CEO of Securiguard and the CEO and majority managing partner of VendTech. In fact, Ms. Marvil is responsible for the oversight of management and finances for defendant VendTEch on a day-to-day basis. Suffice it to say, plaintiff's evidence is sufficient to permit a jury to decide whether the entities should be treated as an integrated enterprise. *See Knowlton v. Teltrust Phones, Inc*., 189 F.3d 1177, 1184 (10th Cir. 1999) (evidence that parent and subsidiary constituted a single employer was for jury where, among other things, companies shared an HR manager, parent was involved in employment-related matters of subsidiary's employees, and entities shared a building, phone system, reception area and office equipment). Summary judgment on this issue is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment (doc. 57) is granted in part and denied in part.


**IT IS SO ORDERED.**


Dated this 12th day of May, 2017, at Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge